## Kash's Executor et al. v. Kash et al.

(Decided Oct. 1, 1935.)

ROSE & STAMPER and ORIE S. WARE for appellants.

BEATTY & BEATTY and RODNEY HAGGARD for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Lee Kash owned lots Nos. 1, 2, and 3 in block B of Bonhaven Heights, outside the city limits of Winchester, Clark county, Ky. He was a single man, never having been married. He owned a home at Winchester which was occupied by Mollie Kash, his widowed mother, and Mrs. Lillie K. Henry, his sister, and her daughter. It was his habit to visit his mother each week. Desiring to build a modern, comfortable home on the three lots, and in order to secure the cash with which to build

it, he made application to the Equitable Life Assurance Society of the United States for a loan of $5,000 and an ordinary life insurance policy on his life for $5,000. It issued and delivered to him on August 1, 1931, a policy of the face value of $5,000, in which Mollie Kash, his mother, was the designated beneficiary. It contained a provision reserving to the insured the privilege of changing the beneficiary; also to assign or pledge the policy. On August 15, 1931, he executed his note to the Equitable for the $5,000, and assigned to it the $5,000 life insurance policy to secure the payment of the former. Simultaneously with the execution and delivery of the note for the $5,000 he executed and delivered a mortgage on the three lots. The mortgage recites that "said policy of life insurance * * * has been assigned to said mortgagee as collateral security for the payment of" the note for $5,000. And that Kash, the insured, "for the better securing the payment to the said party of the second part" of the $5,000 note, "with interest thereon," had "bargained, sold, given, granted, conveyed and released and by these presents does bargain, sell, give, grant, and convey unto the said party of the second part, its successors and assigns," the lots described in the mortgage. Clause No. 9 of the mortgage reads:

"It is further agreed that the party of the second part may resort for the payment of the said principal moneys, premiums and interest to its several securities therefor in such manner as it may think fit."

Clause No. 11 contains this language:

"It is furthermore agreed that if said policy of insurance be still in force, the indebtedness secured hereby shall become immediately due and payable upon the death of the insured, and the party of the second part shall apply toward the payment thereof the amount due from it under the terms of said policy and pay over the balance, if any, to such person or persons as may be legally entitled thereto."

Another provision in the policy is:

"The insured [or assignee if any] may, without the consent of the beneficiary, surrender, assign or pledge this policy and all rights hereunder or, subject to the Society's approval, change to another form or plan of insurance. An assignment by the

insured shall operate to exclude any and all rights of any beneficiary under this policy except that upon release of all outstanding assignments or upon reassignment to the Insured all rights under this policy shall be the same as if such assignment of said policy had not been made and that if assigned or pledged as collateral only by the Insured and equity remaining at the death of the Insured shall accrue to the beneficiary.''

The policy of insurance, Kash's note and mortgage demonstrate that the Equitable was engaged in the life insurance business and also that of loaning money. During his life Kash paid regularly the monthly installments on the note and interest and the premium on the policy up to March 1, 1932. He died April 19, 1932, at which time the balance due on the note was $4,797.74. In his application for the policy, his age was incorrectly stated, and, considering his correct age and the premium, the face of the policy should have been $3,785.05. The beneficiary survived him. The Equitable credited on its note as a payment the $3,785.05, leaving a balance of $1,012.69, with interest from April 19, 1932. In this action, it sought to enforce its mortgage to subject a sufficiency of the proceeds of the lots and improvements to the payment of the balance of its debt. Mollie Kash, the beneficiary, by an appropriate pleading, asserted that upon the death of the insured she became the absolute owner of the $3,785.05, the proceeds of the policy, and that, by reason of it having been applied as a payment on the Equitable's note, she was entitled to be subrogated to the rights of the Equitable to enforce its mortgage on the lots and improvements, for the satisfaction of the $3,785.05. The circuit court decreed in her favor. The executor of Lee Kash is here insisting that the designated beneficiary did not become, on the death of the insured, the owner, or entitled to any portion of the proceeds of the insurance policy, as against Lee Kash's estate.

The parties agree that ''the interest of a beneficiary under a life policy is a contingent or expectant interest'' during the life of the insured; also that the insured had the absolute right to assign or pledge the $5,000 policy to secure the payment of the $5,000 note, and that he never changed the beneficiary under the policy.

The beneficiary insists that the $5,000 policy was secured by the insured's mortgage for her benefit, but admits that the insurance company, as against her as beneficiary, "had the right to credit the proceeds of the policy on its $5,000.00 note." While she concedes "the Equitable had the right to pursue either the policy, or the real estate, or both," she strenuously contends that its action in applying the proceeds of the policy as a credit on its note, instead of resorting to the enforcement of its mortgage on the real estate for the whole of its note, in no way affected her right to the proceeds of the policy, as against Lee Kash's estate. She argues, as to the proceeds of the policy, that she is entitled to the rights and remedies of a surety against the estate of the insured. Her view is that the language in the mortgage, i. e., "it is further agreed that the party of the second part may resort for the payment of the said principal moneys, premium and interest to its several securities therefor in such manner as it may think fit," substantiates her insistence that the rule controlling the right and remedies of a surety are applicable and controlling. Further, she insists that "the fact that the mortgage directs the proceeds of the pledged policy may be paid on the mortgage debt, does not mean that Mollie Kash's equity therein has gone." She illustrates her insistence with this statement:

"It is just the same as though Lee Kash borrowed from the Society and mortgaged his real estate therefor; and then the mortgagee wanted more security, Mollie Kash loaned $3,785.05, in cash, to Lee Kash who in turn pledged the cash to the Society as collateral security. * * * The Society would, of course, apply the $3,785.05 to Kash's debt, but a court of equity would reimburse her as against his estate and give her a lien as against such real estate therefor."

To sustain this line of argument, she cites Thomas v. Beckman, 1 B. Mon. 29; Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834; Kelley v. Ball, 19 S. W. 581, 14 Ky. Law Rep. 132; Landrum v. Landrum's Adm'x, 186 Ky. 775, 218 S. W. 274; Section 655, Ky. Stats.; Thompson v. Latimer, 209 Ky. 491, 273 S. W. 65; Barbin v. Moore, 85 N. H. 362, 159 A. 409, 410, 83 A. L. R. 62.

Section 655, Kentucky Statutes, merely provides that the beneficiary of a life insurance policy "shall be

entitled to its proceeds against the creditors and representatives of the person effecting the same,'' etc. It does not deny the insured the right to exercise the power to deprive the beneficiary of the proceeds of a policy. Thomas v. Beckman and Probst v. Wigginton aptly state the doctrine of subrogation, as it is generally recognized and applied, which is secondarily involved in this case. Kelley v. Ball is illustrative of the application of the doctrine of subrogation. Thompson v. Latimer contains the court's construction of sections 655 and 671, Ky. Stats., with the statement of the rule, where a parent gives or devises to certain children a part only of his estate and dies intestate as to the remainder, a sufficient sum of the undisposed part will be taken to equalize the other with the favored ones, as far as the undevised estate will go. It also construes and applies section 1407, Kentucky Statutes, and prescribes the rule of estimating the value of advancements of the parent. It was stated in Landrum v. Landrum that the insured in a life policy, giving him the right to change the beneficiary, may do so without the consent of the designated beneficiary. Therein the principle of subrogation is again discussed, as it controls the devisee of property charged by a will with the debt of the ancestor.

With confidence the beneficiary relies upon, as decisive of the present case, Barbin v. Moore, supra.

In Barbin v. Moore, the wife of the insured was designated in one policy and the two daughters in the other as the beneficiaries. Each policy contained a provision that the insured could change the beneficiaries or assign or pledge it. The insured obtained a loan of $9,000, which was secured by a mortgage on his real estate. About two years after the policies were issued, he ''pledged both policies to a bank as additional collateral security, in the event of his death,'' for the loan which was secured by a mortgage on real estate. Thereafter he made the payments on the loan as the same became due, so that at his death there was due the bank $7,762.94. The administrator of the insured paid that sum out of the proceeds of the insurance policy, and the bank discharged the mortgage on the real estate, which was sold by the administrator for $9,025. The beneficiaries of the insurance policies sought, under the doctrine of subrogation, to have the court to decree that they were entitled to receive of the proceeds of the real estate in the hands of the administrator, a sum equal to

the amount of insurance money taken by the mortgagee of the real estate to satisfy its debt against the insured. The court held that the applying the proceeds of the insurance policy to the debt which was secured by the mortgage on the real estate, and also by the insurance policy, automatically discharged the lien on the real estate as far as the secured creditor was concerned, and that, "as between the estate and the policy beneficiaries, it was the duty of the administrator to pay the debt, elementary equitable doctrines subrogate the beneficiaries to the right against the mortgage security including the fund into which that security has been converted by the administrator. Merrill v. Houghton, 51 N. H. 61."

It is true, "the distinction between an assignment of a policy or the change of a beneficiary is one well-recognized in law." Also the appointment of a certain beneficiary under a policy gives him or her certain rights. And, unless the beneficiary is changed, his rights continue, notwithstanding the insured's assignment of the policy, and, upon the death of the insured, becomes absolute as against his creditors and his estate subject to the right of the creditors to whom it was assigned. To effectuate the defeat of the right of the beneficiary, it must appear that the insured, by the wording of the assignment of the policy or the instrument evidencing the pledging it, is broad enough in its terms to accomplish the derogation of the right of the beneficiary. This result may be obtained by the insured designating the pledgee as the beneficiary for the sum of his debt, or by directing the pledgee first to resort to the proceeds of the policy for the payment of the debt which it is pledged to secure, in the event of the death of the insured, while the debt is still in existence, before resorting to the enforcement of the mortgage, where it is also secured by a mortgage on real estate. In either case, the insurance as against the designated beneficiary is thus made a part of the estate of the insured.

In Barbin v. Moore there was no word or act of the insured disclosed by the record indicative or suggestive of the intention or purpose of the insured making the proceeds of the policy, to the extent of the debt for which it was pledged, a part of the insured's estate. The only language appearing in that case connoting the intention of the insured in this respect was language to

the effect the policy is assigned to the bank "as additional collateral security, in the event of his death," to secure the loan.

In the pending case, it is expressly declared in the mortgage that the $5,000 policy of insurance "had been assigned to the mortgagee as collateral security for the payment of the loan. * * * Now, this deed witnesseth: That the party of the first part, for the better securing the payment of the party of the second part," the $5,000 note. This and the above excerpts from the mortgage clearly distinguish the present one from the Barbin v. Moore Case. To use the language of the court in Barbin v. Moore, "the real situation is that the policy contract provides for a fund which may be dealt with in several ways. No one of these is exclusive of the others, and the exercise of one destroys or suspends the others only as far as necessary to give full effect to the former, as exercised. The right to assign or pledge is superior to the right of the named beneficiaries; but the latter may be called the residuary right, and it constitutes a legal claim upon all of the title that has not been disposed of in the exercise of the superior right. Mellows v. Mellows, 61 N. H. 137."

Plainly, the language of the mortgage herein is broad enough to convey the intention of the insured, and to establish his and the Equitable's agreement that in the event of his death, for the Equitable to utilize the proceeds of the policy for the payment of the latter's debt before resorting to the enforcement of the mortgage on the real estate. And the designated beneficiary is bound thereby even as against the insured's estate. This theory is authorized and sustained by the language of the mortgage and is in harmony with the provisions of the policy and the insured's assignment of it to the Equitable.

This conclusion is not in conflict with section 655, Ky. Stats., for it is not susceptible of the construction as intending to forbid or prohibit the insured from executing an instrument broad enough to defeat, at his death, the beneficiary, nor deprive him of the power of directing the proceeds of the policy first to be applied by a pledgee to the payment of the debt before resorting to the enforcement of a mortgage executed and delivered by the insured as "additional security."

The act of the Equitable in applying the proceeds of the policy to the payment of the note, a sum equal to the proceeds of the policy, was in accordance with the authority expressly conferred on the Equitable by the language of the mortgage, as well as carrying out the express purpose of the insured, manifested by the assignment of the policy, considered in consideration with provisions of the mortgage.

The judgment of the chancellor not being in harmony herewith, it is reversed for proceedings consistent with this opinion.