# Froman v. Froman's Ex'r et al.

Jan. 26, 1943.

B. L. Shamburger for appellant.

Frank A. Ropke for Froman's Executor.

Edward J. Rehm for other appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Irene N. Froman, wife of appellant, Homer Froman, died testate May 29, 1940. By her will she disposed of $25,500 in specific bequests to a brother, a sister, a sister-in-law, and a number of nieces, nephews, and friends. She devised her one-half interest in a house and lot in Louisville to her sister. She left the residue of her estate to her husband, and named him executor without bond. Her personal estate was appraised at $29,-608.50, the principal item being 390 shares of Southern Optical Company stock at $75 a share. Homer Froman renounced the provisions of the will and elected to take the distributable share of his wife's estate to which he

would be entitled as her surviving husband had she died intestate. Later he brought an action for construction of certain provisions of the will, and also for a determination of his rights in the proceeds of four life insurance policies in which he had been named beneficiary and which had been pledged as collateral on a note executed to the Citizens Union National Bank by Mrs. Froman. The circuit court held that the proceeds of the policies should be applied in satisfaction of Mrs. Froman's debt to the bank, and that the beneficiary was not entitled to be subrogated to the rights of the bank or to be reimbursed from the estate to the extent that the bank had applied the proceeds of the policies in satisfaction of the debt. The facts are these:

Mrs. Froman was a stockholder of the Southern Optical Company. There was a stockholders' agreement whereby the shares of stock of any stockholder who died were to be offered to the surviving stockholders at a price of $75 a share. Shortly before Mrs. Froman's death two stockholders died, and in order to raise the money with which to purchase the proportion of their stock to which she was entitled under the stockholders' agreement, she borrowed from the Citizens Union National Bank $2,-618.51 and assigned to the bank to secure the loan four life insurance policies payable to her husband in the event of her death. The assignments constituted the only security furnished the bank. The four assignments are identical, and each was signed by Mrs. Froman and her husband, the beneficiary named in the policy, and was acknowledged before a notary public. Mr. Froman also signed the note. Paragraph 2 of the assignment reads in part:

"The assignment of such policy is made and the policy is to be held as collateral security for all direct and indirect liabilities of the undersigned, or any of them, to the Bank, due, or to become due, or that may hereafter be contracted.

"The Bank shall apply on the indebtedness secured by such assignment all sums paid to it under the said policy; and any balance remaining with the Bank after the payment of all such liabilities in full, shall be paid over to the person or persons who would have been entitled to receive such amount from the Insurance Company if the assignment had not been executed. No person interested in such

policy shall, on account of the application of any of the proceeds of such policy on the said liabilities secured by the assignment thereof, have the right to contribution or reimbursement from any other party or to be subrogated to the rights of the Bank in any other collateral.''

It appears from the assignments that each of the policies contained a clause reserving to the insured the right to change the beneficiary.

Appellant cites and relies upon Barbin v. Moore, 85 N. H. 362, 159 A. 409, 83 A. L. R. 62, in support of his contention that he should be subrogated to the rights of the bank. In Barbin v. Moore the insured pledged as collateral security on a loan a policy in which he reserved the right to change the beneficiary. The loan was also secured by a mortgage on real estate. It was held that there was no language in the policy or the assignment tending to indicate an intention on the part of the insured to assign the policy for the benefit of his estate and to divest the beneficiary of his rights thereunder, and the designated beneficiary was subrogated to the right of the bank against the mortgage security. In Kash's Ex'r v. Kash, 260 Ky. 508, 86 S. W. (2d) 273, 274, Lee Kash assigned to the Equitable Life Assurance Society an insurance policy on his life for $5,000 to secure the payment of a note for $5,000 executed by him to the Society, and at the same time executed a mortgage on real estate to secure the same debt. Mollie Kash, mother of Lee Kash, was the designated beneficiary in the life insurance policy which contained a provision reserving to the insured the privilege of changing the beneficiary. Upon the death of the insured the Equitable Life Assurance Society credited the proceeds of the policy on its note, and then brought an action to enforce its mortgage to subject a sufficiency of the proceeds of the mortgaged real estate to the payment of the balance of its debt. Mollie Kash, the designated beneficiary, intervened and asked to be subrogated to the rights of the Equitable Life Assurance Society to enforce its mortgage to the extent of the proceeds of the policy which had been applied on the debt. The mortgage recited that the policy of life insurance had been assigned to the mortgagee as collateral security for the payment of the note for $5,000, and clause 9 of the mortgage read:

'' 'It is further agreed that the party of the second'

4

part may resort for the payment of the said principal moneys, premiums and interest to its several securities therefor in such manner as it may think fit.' ''

Clause 11 of the mortgage read:

" 'It is furthermore agreed that if said policy of insurance be still in force, the indebtedness secured hereby shall become immediately due and payable upon the death of the insured, and the party of the second part shall apply toward the payment thereof the amount due from it under the terms of said policy and pay over the balance, if any, to such person or persons as may be legally entitled thereto.' ''

The court declined to allow the beneficiary's claim of the right of subrogation, and, after distinguishing the case of Barbin v. Moore, said:

"Plainly, the language of the mortgage herein is broad enough to convey the intention of the insured, and to establish his and the Equitable's agreement that in the event of his death, for the Equitable to utilize the proceeds of the policy for the payment of the latter's debt before resorting to the enforcement of the mortgage on the real estate. And the designated beneficiary is bound thereby even as against the insured's estate. This theory is authorized and sustained by the language of the mortgage and is in harmony with the provisions of the policy and the insured's assignment of it to the Equitable."

The ruling in Kash's Ex'r v. Kash was followed in Berger v. Berger, 264 Ky. 225, 94 S. W. (2d) 618, where the facts were similar. Cf. Landrum v. Landrum's Adm'x, 186 Ky. 775, 218 S. W. 274.

The language of the assignment in the present case is clear and unequivocal, and evinces the intention of the insured to have the proceeds of the policy applied to the payment of the note in the event of her death and that the beneficiary should not "have the right to contribution or reimbursement from any other party or to be subrogated to the rights of the bank in any other collateral." The chancellor in a well-considered opinion distinguished the present case from Barbin v. Moore, supra, and held that appellant was not entitled to be subrogated to the rights of the bank or to be reimbursed by

the estate of the insured. We adopt the following from his opinion which aptly expresses our views on the subject:

> "* * * both the insured and the beneficiary agreed that in the event the proceeds of the policy were applied to the satisfaction of the note jointly executed by them that the beneficiary of the policy should have no 'right to contribution or reimbursement from any other party * * *.' Here Mr. Froman was the only person interested in the policy. He was the designated beneficiary. The circumstances of the loan from the Bank set out in the petition and the argument of plaintiff's counsel to the effect that the testatrix was purchasing valuable stock to become part of her estate and intended that the note should be paid from her estate in the event of her death I think are squarely met by the express words of the formally executed assignment. She authorized the Bank to apply the proceeds to the satisfaction of the debt and expressly set out that in the event this was done no person interested under the policy, obviously the sole designated beneficiary, would have any right to any contribution or reimbursement from any other party.

> "It may be true that she did not expect to die and had the intention to pay off the indebtedness. It may also be true that the beneficiary did not expect the insured to die and that he too thought the indebtedness would be paid off and the proceeds of the policies would be paid in full to him. But it is also true that both the insured and the beneficiary expressly agreed in writing that in the event the insured did die the entire indebtedness should be paid from the proceeds of the policy and in which event the beneficiary had no right to contribution or reimbursement."

By the assignments the insured indicated that the insurance money, not her estate, should be the primary fund from which the note to the bank was to be paid.

The judgment is affirmed.