## Weissman Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

*F. Gilman Spencer*, for Commonwealth.

*Arthur M. Cooper*, contra.

KLEIN, J., January 30, 1948.—Testator, William Weissman, executed an "Agreement of Trust" on September 9, 1935, by the terms of which he agreed to designate the trustees named therein as beneficiaries of two life insurance policies issued on his life by the Equitable Life Assurance Society of the United States. One policy was in the sum of $2,500 and the other $1,000. At the time the trust instrument was executed both policies were encumbered with policy loans. Testator changed the beneficiaries in accordance with the provisions of the trust agreement, but retained possession of the two policies. The primary purpose of the trust was to provide "for the maintenance, support, education and upbringing" of settlor's son, Irving, who was 13 years of age when the trust was created. The trust agreement provided: "If the income is not sufficient for these purposes, then any and all of the principal of the fund may be used."

It appears from a stipulation filed by counsel that testator increased the amounts of the policy loans from time to time, so that in 1943 the larger policy was encumbered in the sum of $1,241.47, and the smaller policy in the sum of $509.75, or a total of $1,751.22, plus accrued interest on both loans at the rate of 6 percent per annum.

On October 9, 1943, decedent borrowed $1,300 from the Kensington National Bank of Philadelphia on a demand note and assigned the $2,500 policy to the bank as collateral security for the loan. With the

money he obtained from the bank he repaid the loan with accrued interest to the insurance company. On April 26, 1944, he borrowed an additional $500 from the same bank and assigned the $1,000 policy as collateral security, using the proceeds of that loan to repay the obligation to the insurance company on the smaller policy.

At testator's death in 1946, the insurance company paid the proceeds of the policy to the bank and the trustees jointly. The bank retained $2,048, the amount of its debt, and paid the balance to the trustees.

The surviving trustee under the trust agreement presented a claim at the audit of the executor's account, asking to be subrogated to the amount of the indebtedness deducted by the bank. The auditing judge dismissed the claim, as the result of which the present exceptions were filed.

The auditing judge held that the surviving trustee was not entitled to subrogation and dismissed his claim. He based his conclusions on the fact that testator retained possession of the insurance policies and never assigned or surrendered them to the trustees designated in the trust agreement. He also relied on the authority of Cassell v. Bigler et al., 22 D. & C. 125 (1934) and an adjudication by Van Dusen, P. J., in Ashcroft's Estate, no. 3333 of 1945 (not reported), both of which decisions are predicated on Fidelity Trust Co., Admr. v. Union National Bank of Pittsburgh et al., 313 Pa. 467 (1933-1934).

Exceptants contend that, in a solvent estate such as this one, the assignment of the policy as collateral security for a debt of decedent entitles the beneficiary to be subrogated to the claim against decedent's personal estate as the primary source for the payment of his debts. They do not cite any decisions in this State in support of their contention, but rely on an article by Harry W. Speidel entitled, "Pledging Life Insurance: Interest of the Beneficiary as Against the Estate

of the Insured," 51 Dickinson Law Review, 255 (1947), and on a number of decisions in other jurisdictions which appear to sustain their position.

Counsel for exceptants, in his brief, has made a careful analysis of the Fidelity case and strenuously argues that it cannot be accepted as authority in the present case, because it involved the right of the administrator of a deceased insured's estate, acting as representative of the creditors of an insolvent decedent. In effect, his position is that the conclusion that an insured can carve out the interest of the wife for the benefit of creditors has no bearing on the question whether the wife still retained the right of subrogation as against noncreditors. He also cites in support of his position Kenin's Trust Estate (No. 1), 343 Pa. 549, 559 (1942), in which Mr. Chief Justice Maxey said specifically that the Fidelity decision "must be interpreted in the light of the facts of that case."

The cases in other jurisdictions are practically unanimous in declaring that the intention of the insured is the controlling factor in a controversy between a beneficiary in a life insurance policy and the estate of the insured: Smith et al. v. Coleman et al., 184 Va. 259, 35 S. E. (2d) 107 (1945); Mutual Life Ins. Co. of New York v. Illinois National Bank et al. (D. C.); 34 F. Supp. 206, 210 (1940); Kash's Ex'r. et al. v. Kash et al., 260 Ky. 508, 86 S. W. (2d) 273 (1935); Farracy v. Perry, 12 S. W. (2d) 651 (Tex. Civ. App. 1929). In our opinion, this is a sound statement of the rule which should control the instant case. It therefore becomes unnecessary for us to decide whether the factual situation here existing brings this case within the ruling of the Fidelity decision.

The beneficiary named in the insurance policy, as well as the beneficiaries under the will, are all recipients of decedent's bounty. He had the right until the moment of his death to deprive all of them of the interest he had bestowed upon them. As the auditing

judge has pointed out, decedent at all times retained complete dominion over the policy and could have destroyed the expectancy of the named beneficiary in several ways, including surrender of the policy to the insurance company for cancellation upon receipt of its paid-up value. He could also, of course, at all times have changed the provisions of his will. Under these circumstances, the question of the rights of his respective beneficiaries would appear to be a matter of his intention with respect thereto.

Ordinarily, when an asset belonging to a decedent is pledged as collateral security for a debt, his personal estate, which is the primary fund for the payment of his debts, could be used to reimburse the beneficiary to the extent of the diminution of his gift. In the case of a solvent estate, we are therefore not prepared to say that, in the absence of a manifest intention to the contrary, the beneficiary of a life insurance policy would not be entitled to subrogation where the proceeds of the policy are reduced by the amount of a debt, for which the policies have been assigned as collateral security.

In the present case, however, we think there were two important circumstances which clearly evidenced the intention of testator to impose the burden of the debt upon the interest of the beneficiary named in the insurance policy, and not upon his personal estate. In the first place, the policies were already encumbered with "policy loans" when the trustees were named as beneficiaries, and these loans were increased by testator, personally, from time to time. These "policy loans" were clearly not such debts as would be the subject of subrogation against his personal estate: Black's Estate, 341 Pa. 264 (1941). When he assigned the policies to the bank, he used the money he obtained to repay the policy loans to the insurance company. It is true that the aggregate of these "loans" was slightly less than the amount he borrowed from the bank, but

the change obviously was made by the settlor to reduce his interest payments, as the rate of interest on the loans from the insurance company was 6 percent per annum, whereas the bank loaned the money at 4 percent.

In the second place, as we have already pointed out, the primary purpose of the trust was to provide for the maintenance and education of settlor's son, Irving, who was 13 years of age when the trust was created. When the loans were made at the bank, Irving had already reached his majority, and the principal purpose of the trust had ended. Although he had not yet reached the age of 24 stipulated in the trust agreement, there was obviously no reason for increasing the trust fund for his "maintenance, support, education and upbringing" after he became 21 years of age.

We cannot therefore assume that when testator substituted the bank loan for the policy loans, he desired to benefit the trust estate and change the status of the parties by placing the liability for the repayment of this indebtedness on his personal estate. It would have been an easy matter for decedent to have stipulated that the amount of the debt be paid from his personal estate if he had so desired. We must conclude that his failure to so stipulate, under the particular circumstances of this case, clearly indicates an intention on his part that the beneficiary named in the policy, and not his estate, should bear the burden of the debt.

Through inadvertence, an expenditure of $118.80 made by the widow for funeral expenses was overlooked in the adjudication, although the claim was admitted by counsel. The adjudication is accordingly amended and the claim of the widow allowed in that amount.

All exceptions are dismissed, and the adjudication, except as amended by the allowance of the widow's claim of $118.80, is confirmed absolutely.