# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-2464

———————

Matthew Luxton, et al.,
              &ast;
              &ast;
  Plaintiffs - Appellants,   &ast;
              &ast;  Appeal from the United States
 v.             &ast;  District Court for the
              &ast;  District of Minnesota.
United States of America,   &ast;
              &ast;
  Third Party       &ast;
  Defendant - Appellee.   &ast;

———————

Submitted:  March 14, 2003

Filed:  August 22, 2003

———————

Before HANSEN,[*] Chief Judge, JOHN R. GIBSON and LOKEN, Circuit Judges.

———————

LOKEN, Chief Judge.

  Following Beverly Luxton's death, her three children as named beneficiaries commenced this action against State Farm Life Insurance Company to recover the proceeds of three life insurance policies. State Farm interpleaded the United States because, some years before her death, Luxton had executed Collateral Assignments

———————

[*]The Honorable David R. Hansen stepped down as Chief Judge at the close of business on March 31, 2003. The Honorable James B. Loken became Chief Judge on April 1, 2003.

providing that the Internal Revenue Service as assignee may claim the policy proceeds to pay Luxton's outstanding tax liabilities. State Farm paid the proceeds into court and was dismissed from the case. After a trial, the district court[1] upheld the Collateral Assignments and awarded the policy proceeds to the IRS. The named beneficiaries appeal. We affirm.

## I. Background

In February and March 1994, the IRS assessed Luxton $793,301.39 for unpaid federal employment and unemployment taxes, penalties, and interest. At that time, Luxton's assets included three life insurance policies in which State Farm agreed to pay a total of $327,000 upon Luxton's death. Each policy granted Luxton the right to change beneficiaries, to demand the policy's cash surrender value, and to assign the policy by a writing filed with State Farm. The policies' Assignment clause provided that "[a]n assignment may limit the interest of any beneficiary."

When the substantial unpaid taxes were assessed, Luxton was undergoing extensive cancer treatments and was having difficulty meeting her medical and living expenses. In September 1994, after discussions with IRS agent Lloyd Fritsvold, Luxton submitted to the IRS a written offer of compromise in which she offered to pay "327,000 upon my death" in return for reducing her tax liability to that amount. The IRS rejected the offer because, although Luxton was not expected to live more than three years, the offer did not include a fixed date for payment.

After further discussions with Agent Fritsvold and Luxton's State Farm agent, Luxton executed the Collateral Assignments here at issue. The Collateral Assignments are standard-form State Farm documents with handwritten entries

_____

[1]The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota.

-2-

identifying the IRS as assignee, the policy number, and Luxton as the person whose life was insured. State Farm recorded the Collateral Assignments in its policy files and forwarded them to the IRS where Agent Fritsvold noted them on an IRS Form 2276 Collateral Deposit Record.

When it received the Collateral Assignments, the IRS did not compromise or otherwise reduce Luxton's outstanding tax liability. Indeed, five months after the Collateral Assignments were executed, the IRS filed notices of its tax liens against Luxton's property for the entire amount of her tax liabilities. However, consistent with an informal understanding between Agent Fritsvold and Luxton, the IRS made no further collection efforts prior to Luxton's death. In addition, in 1995 the IRS allowed $17,000 of proceeds from the sale of Luxton's residence to be used to prepay premiums on the life policies; in late 1997 the IRS allowed Luxton to borrow $5,000 of accumulated policy dividends to pay medical expenses; and in 1999 the IRS authorized the use of policy dividends to pay premiums.

Though Luxton survived her cancer longer than initially expected, she died in September 1999. Shortly before her death, she named her son Matthew beneficiary on two of the policies. The other two plaintiffs, Luxton's daughters, became the named beneficiaries of the third policy in 1994.

## II. Discussion

In <u>United States v. Bess</u>, 357 U.S. 51, 55-57 (1958), the Supreme Court held that a federal tax lien entitles the IRS to recover only the cash surrender value of a life insurance policy, not the policy proceeds, because a federal tax lien is limited to the taxpayer's "property and rights to property," 26 U.S.C. (IRC) § 6321, and under state law a policyholder has no interest in life insurance proceeds before her death. Consistent with <u>Bess</u>, IRC § 6332(b) now permits the IRS to levy on a life insurance policy only to the extent of its cash surrender value. Therefore, the beneficiaries

argue, it would "frustrate the intent of Congress" to permit the government to recover more than the cash surrender value of the policies in this case. We disagree.

The government's claim to the policy proceeds is based on its rights under the Collateral Assignments, not on its tax liens. Nothing in Bess or § 6332(b) suggests that those authorities *limit* the IRS to enforcing its tax liens. Therefore, the primary issue in this case is whether the Collateral Assignments entitle the government to recover the policy proceeds under Minnesota law.[2] In addition, the beneficiaries argue that the Internal Revenue Code did not authorize the IRS to accept the Collateral Assignments and to collect the policy proceeds (in effect, that Agent Fritsvold's arrangement with Luxton was ultra vires).

## A. The Effect of the Assignments under Minnesota Law

The district court held that Luxton made a valid assignment of the policy proceeds to the IRS which "limit[ed] the interest of the beneficiaries to the amount remaining after payment of the existing liabilities to the IRS." We review the court's interpretation of state law de novo. See Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 940 (8th Cir. 2002) (standard of review).

Assignments of insurance policies as collateral securing the policyholder's debts to the assignee are not uncommon. See Meyer, 375 U.S. at 235; All Am. Life Ins. Co. v. Billingsley, 122 F.3d 643, 650 (8th Cir. 1997); Graves & Christensen, McGill's Legal Aspects of Life Insurance 210-12 (2d ed. 1997). Unlike an absolute assignment, which permanently transfers all rights in the policy to the assignee, a collateral assignment transfers only those rights necessary to secure the assignor's debt and extinguishes the named beneficiary's interest only to the extent of the

---

[2]The parties agree that state law defines the extent of the government's rights under those instruments. Cf. Meyer v. United States, 375 U.S. 233, 236 (1963).

assignor's debt to the assignee.  See Westchester Enters., Inc. v. Swartout (In re Swartout), 123 B.R. 794, 799-800 (Bankr. S.D. Ohio 1991); Succession of Goudeau, 480 So. 2d 806, 808 (La. 1985).

The Supreme Court of Minnesota has long acknowledged that a life insurance policy may be assigned as collateral without the consent of the beneficiary, if the policy reserves that right to the insured.  See Janesville State Bank v. Aetna Life Ins. Co., 274 N.W. 232, 233 (Minn. 1937); Hale v. Life Indem. & Inv. Co., 68 N.W. 182, 185-86 (Minn. 1896).  Here, the policies issued to Luxton contained a provision allowing assignments, and she signed Collateral Assignments that assigned specific policyholder rights to the IRS, including "[t]he sole right to collect from the insurer the net proceeds of the policy," and "[t]he sole right to surrender the Policy and receive the surrendered value thereof at any time."  The beneficiaries argue that the Collateral Assignments are nonetheless defeated by the policy provision that, upon Luxton's death, the proceeds will be paid "to the primary beneficiaries living when payment is made." We disagree.  The policies expressly authorized assignments that "limit the interest of any beneficiary."  Though the Collateral Assignments reserved Luxton's "right to designate and change the beneficiary," they provided that "any designation or change of beneficiary . . . shall be made subject to this assignment and to the rights of the Assignee hereunder."

The beneficiaries further argue that payment of the policy proceeds to the IRS would violate MINN. STAT. § 61A.12, which provides that, "[w]hen any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the [policyholder]."  Again, we disagree.  The purpose of this statute is to exempt a debtor's life insurance policies from the reach of her creditors.  See Murphy v. Casey, 184 N.W. 783, 784 (Minn. 1921).  The beneficiaries cite no case in which § 61A.12 or a similar statute has been held to preclude an assignee's claim, as opposed to an ordinary creditor's claim.  The few courts that considered the question have held that identical laws in other States did

not bar the insured from limiting or defeating the beneficiary's interest by assignment. See Kash's Ex'r v. Kash, 86 S.W.2d 273, 276 (Ky. 1935); Ferris v. Phoenix Mut. Life Ins. Co., 272 N.Y.S. 781, 783-84 (App. Div. 1934), aff'd, 195 N.E. 184 (N.Y. 1935). We conclude that the Supreme Court of Minnesota would follow this consistent authority. That Court decided Janesville over forty years after the enactment of § 61A.12 and did not even mention the statute.

## B. The IRS's Authority to Accept the Assignments

The Internal Revenue Code provides that the IRS may compromise a federal tax liability. The statute and implementing Treasury Regulations specify in detail the documentary record that must be compiled and the agency approval that must be obtained for a compromise agreement to be valid. See 26 U.S.C. § 7122 (1994); 26 C.F.R. § 301.7122-1(d)(3) (1995). This statutory procedure is "the exclusive method by which tax cases could be compromised." Botany Worsted Mills v. United States, 278 U.S. 282, 288-89 (1929). In this case, the IRS rejected Luxton's formal offer-in-compromise, and Agent Fritsvold then proceeded to fashion an informal understanding with her. The beneficiaries argue that, even if collateral assignments of policy proceeds are valid under Minnesota law, the IRS is only authorized to accept collateral for a tax liability as part of a formal offer-in-compromise.

In this case, the IRS did not *compromise* Luxton's tax liability, that is, agree to reduce her tax liability in exchange for partial payment or other consideration. See BLACK'S LAW DICTIONARY 281 (7th ed. 1999). Indeed, after receiving the Collateral Assignments, the IRS filed notices of tax liens for the full amount, confirming that Luxton's tax liability had not been compromised. Rather than formally compromise, Agent Fritsvold did what many prudent creditors would have done under the circumstances, accepting an assignment of the right to insurance policy proceeds that exceeded Luxton's available assets, paying premiums to keep the policies in force, and deferring more aggressive collection actions. Luxton benefitted from the

-6-

arrangement, at least to the extent she was permitted to borrow against the policies to pay medical expenses. The beneficiaries were not harmed because the IRS could have effectively cancelled the policies by foreclosing on their cash surrender values before Luxton's death.

Thus, the beneficiaries' contention boils down to the unsupported assertion that the IRS has no authority to take informal actions of this kind to enhance its prospect of collecting unpaid taxes, interest, and penalties. It is counterintuitive to posit that Congress would arm the IRS with a powerful tax lien and other formidable collection tools, but would deny the agency the authority to employ other devices commonly used by creditors to improve their position, such as securing interests in collateral by means other than a lien. And in fact, the Internal Revenue Code refutes the beneficiaries' contention, expressly authorizing the agency to employ "such other reasonable devices or methods as may be necessary or helpful in securing a complete and proper collection of the tax." IRC § 6302(b). Likewise, Part 5.6.1 of the Internal Revenue Manual confirms that revenue agents are authorized to accept collateral security from taxpayers when that is in the best interests of the government, and to record the receipt of such collateral on IRS Form 2276, as Agent Fritsvold did in this case.

For the foregoing reasons, we conclude that under Minnesota law the Collateral Assignments granted the IRS an interest in the policy proceeds superior to that of the named beneficiaries. Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.