CASE 44.—ACTION BY MORRIS GRIFFIN'S ADMINISTRATOR AGAINST G. W. HOWE'S EXECUTOR TO RECOVER THE PROCEEDS OF A LIFE INSURANCE POLICY.— June 28.

# Howe's Exr. v. Griffin's Admr.

Appeal from Montgomery Circuit Court.

A. W. YOUNG, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

Contracts—Legality—Fraud—Parties in Pari Delicto.—Where a life policy void as against public policy because the beneficiary has no insurable interest in the life of insured, so that no one is entitled to recover on it, was issued on insured's fraudulent statement in the application that the beneficiary was his creditor to the amount of the policy, and the insurance was paid to the beneficiary, insured's administrator cannot recover it of the beneficiary, on the ground that he holds it as trustee for him; insured and the beneficiary having both participated in the fraud, and there being nothing, outside the fact that he could not write, to show that insured was imposed upon or deceived.

ROBERT H. WINN for appellant.

POINTS AND AUTHORITIES.

1. The petition should have been dismissed; the secondary affidavit demanded by Sec. 3870 of the Statutes, was insufficient because:

a.   The affiant does not disclose any knowledge of the facts: Dewhurst v. Shepherd's exor., 102 Ky., 239.

b.   The affidavit was made by an attorney for the plaintiff, employed under a "graduated fee." He was incompetent as a witness, and was interested pecuniarily in the recovery: Smick's admr. v. Beswick's admr., 113 Ky., 439; Trabue's exor. v. Harris, 1 Met., 597; Nutall's admr. v. Brannin's exor., 5 Bush, 11.

2.   The court should have required a personal verification of the petition: Civil Code, sec. 117, subsec. 4.

3.   The court should have required the petition to be made more specific; it does not allege to whom the Equitable promised to pay the proceeds of the policy.

4.   The transaction was a gambling transaction, and void as against public policy: Griffin's admr. v. The Equitable, 119 Ky., 856.

5.   Relief will be denied in Kentucky to a participant in a transaction in nature gambling and against public policy: Bromley's Admr. v. Washington Life, 92 S. W., 17; Central Trust Co. v. Respass, 112 Ky., 606; McMullen v. Hoffman, 174 U. S., 639, s. c. 43 L. Ed., 1117.

6.   The court, of its own motion, should refuse relief when the fraud appears: Bromley's Admr. v. Washington Life, 92 S. W., 17; Hall v. Coppell, 7 Wall., 559; s. c. 19, L. Ed., 244

7.   The action was barred by limitation. It was not brought within five years, nor within one year after the qualification of his personal representative; and Howe's representative had qualified 19 months before the five years elapsed: Ky. Stats., sec. 2528; Pilcher v. McCowan, 8 Ky. Law Rep., 786; Jones v. Mitchell's Admr., 9 Ky. Law Rep., 858; C. & L. R. R. Co. v. Bowler's Heirs, 9 Bush, 485; Duke v. Davis, 101 S. W., 390.

8.   The public policy of a state must be deduced from its constitution, its statutes and its judicial records; and each state must necessarily establish its own public policy: Union Central Life Ins. Co. v. Spinks, 83 S. W., 615; Hartford Ins. Co. v. C. M. & St. P. R. R. Co., 70 Fed. Rep., 201 s. c 30, L. R. A., 193; Myers v. Meinrath, 101 Mass., 366, s. c. 3., Am. Rep., 368.

9.   No relief will be granted to one as against the other of two jointly engaged in a transaction, in nature gambling or against public policy: Central Trust Co. v. Respass, 112 Ky., 606; Griffin's Admr. v. The Equitable, 119 Ky., 856; Smead v. Williamson, 16 B. Mon., 492; Hocker v. Gentry, 3 Met., 463; Laughlin v. Dean, 1 Duv., 20; Campbell v. Anderson, 2 Duv., 384; Morrison v. Bennett, 20 Mont., 560; s. c. 50 L. R. A., 158; King v. Winant's, 71 N. C., 469; s. c. 17 Am. Rep., 11; Hunter v. Pfeiffer, 108

Howe's Exr. v. Griffin's Admr.

Ind., 197; s. c. 9 N. E., 124; Emery v. Ohio Candle Co., 47 O. St., 320; s. c. 24 N. E., 660; Shaffner v. Pinchback, 133 Ill., 410; s. c. 24 N. E., 867; Morgan v. Groff, 5 Denio, 364; s. c., 49 Am. Dec., 273.

10.  Ex dolo malo non oritur actio. No right of action can arise out of a fraud; nor can one recover when he must disclose his own moral turpitude as a prerequisite to a recovery: McMullen v. Hoffman, 174 U. S., 639, s. c., 43 L. Ed., 1117; Holman v. Johnson, 1 Cow., 341; Hall v. Coppell, 7 Wall., 558, s. c. 19, L. Ed., 244; Hayne v. Rudd, 102 N. Y., 372, s. c. 7 N. E., 287; Embrey v. Jemison, 131 U. S., 336, s. c., 33 L. Ed., 172; Babcock v. Thompson, 3 Pick., 446, s. c., 15 Am. Dec. 235; Pomeroy's Equity, 2d ed., vol. 1, sec. 401; Pomeroy's Equity, 2d ed., vol. 3, sec. 938.

11.  The doctrine of the last foregoing paragraph has been unequivocally adopted, as the settled public policy of Kentucky; Kimbrough v. Lane, 11 Bush, 556; Davezac v. Seiler, 12 Ky. Law Rep., 599; Smith v. Richmond, 70 S. W., 846, s. c. Ky. Law Rep., 1117; Chapman v. Holly, 80 S. W., 190, s. c.25 Ky. Law Rep., 2183.

12.  A defendant under an action for money had and received can only be held to answer for what he has received. If Howe's estate owes anything, it owes only one-half the proceeds of the policy: Limited Investment Assn. v. Investment Assn., 99 Wis., 54, s. c. 74 N. W., 633; Blackstone, vol. 2, p. 443.

13.  There can arise no implied contract in favor of Griffin's estate. If there is any obligation upon the part of Howe's estate to refund, it is to the Equitable, the party defrauded: Griffin's Admr. v. The Equiable, 119 Ky., 856.

JOHN A. JUDY and HAZELRIGG, CHENAULT & HAZELRIGG for appellee.

The doctrine that the courts will not aid a plaintiff who is pari delicto with the defendant, is not a rule of universal application. It is based on the principle that to give the plaintiff relief in such cases would contravene public morals and impair the good of society; therefore the rule should not be applied in a case in which to withhold the relief would to a greater extent offend public morals.  To promote the good of the public is the highest aim of the courts in the application of this doctrine.

### AUTHORITIES CITED.

Howard's Admr. v. Leavell's Admrx., 10 Bush, 482; Griffin's Admr. v. Equitable Assurance Society, 84 S. W., 1164; Beard v.

Sharp, 18 Ky. Law Rep., 1029; 9 Cyc., 550; Bacon on Benefit So-
cieties & Life Insurance, secs. 250b and 397; Mutual Life Ins. Co.
v. Blodgett, 27 S. W., 286 (Texas case); Bigelow on Fraud, p. 203;
Pomeroy's Equity Jurisprudence, secs. 941 and 942; Anderson's
Admr. v. Meredith,' 6 Bush, 622; Civil Code, sec. 80; Field v. Wal-
lace's Admr., 6 Monroe, 334.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Reversing.

This is an action by John Hays, as administrator
of Morris Griffin, deceased, appellee against John G.
Winn, executor of C. W. Howe, appellant, to recover
the proceeds of a policy of insurance for $9,500,
which was issued upon the life of Morris Griffin by
the Equitable Life Assurance Society and made pay-
able to Howe & Johnson, a firm composed of J. G.
Johnson and C. W. Howe.

The petition alleges that on the ——— day of April,
1893, Morris Griffin made a written application to
the Equitable Life Assurance Society for a policy
of insurance to be issued upon his life for the sum
of $9,500, to be made payable to Howe & Johnson,
which firm was composed of C. W. Howe and J. Gano
Johnson, and that upon said application to said
Equitable Life Assurance Society a policy of insur-
ance upon the life of said Morris Griffin was issued,
by which and in which it, in consideration of the
advanced payment of $266 and of an annual payment
of $266 to be made thereafter at the office of the
society in the city of New York on or before the 24th
day of April of each year during the continuance
of the contract, promised to pay the sum of $9,500,
upon satisfactory proof of the death of Morris Griffin
of Mt. Sterling, Ky.; that all of the premiums upon
said policy were paid for and in the name of said
Morris Griffin, but were paid by said Howe & John-

son, and the premiums were all paid upon the 24th
day of April up until said Griffin's death; that, while
the application stated on its face that said Howe &
Johnson were creditors of Griffin, they were not in
fact creditors of his except in the sum of about $300,
of which amount $266 was loaned him to pay said
premium, and the balance was for merchandise fur-
nished said Griffin; and that the said Howe & John-
son had no insurable interest in the life of said
Griffin other than as creditors, and had no greater
insurable interest in his life than the sum so loaned
and the value of the merchandise so furnished; that
said policy was held by said Howe & Johnson in trust
for said Griffin and his estate, and to secure to them
the amount owing them by said Griffin with legal
interest thereon; that after the death of said Griffin
satisfactory proof was presented of the death of said
Griffin to the Equitable Life Assurance Society,
whereupon it paid to the said Howe & Johnson on the
15th day of August, 1900, the proceeds of said policy
in the sum of $9,361.58, found to be due on said
policy, all of which said sum was paid to said Howe
& Johnson in trust for said Griffin's estate, except
to the extent of the money loaned and the value of
the merchandise so furnished, which amounts were
due to Howe & Johnson; that the said Howe and
Johnson, nor either of them, have ever paid the
appellee the proceeds of said policy or any part
thereof, and wrongfully withhold said sum from this
plaintiff. After certain preliminary motions, which
it will not now be necessary to consider, appellant
filed a demurrer to the petition, which was overruled
by the court. Thereafter appellant filed an answer
in eight paragraphs. Paragraph 1 is a traverse,
based upon appellant's want of information and

belief of the facts set out in the petition. In view
of the conclusion reached by the court, it will not be
necessary to set forth the defenses contained in para-
graph 2, 3, 4, 5, 7, and 8. Paragraph 6 is a plea of
fraudulent conspiracy on the part of Griffin, Howe,
and Johnson, by which they deceived the Equitable
Life Assurance Society and induced it to believe that
said Howe & Johnson were creditors of said Griffin,
when in truth they were not his creditors in any
sum. Said paragraph further states that the con-
sideration which moved Morris Griffin to enter into
said conspiracy was the issuance of an insurance
policy on said Griffin's life in the sum of $500, to
be made payable to said Griffin or his wife and chil-
dren, who were dependent on him, and that the said
Howe & Johnson agreed to and did maintain and
keep alive said $500 policy until it became a claim
against the Equitable Life Assurance Society which
issued it. Demurrers were sustained to the second,
third, fifth, sixth, and eighth paragraphs of appel-
lant's answer. A motion to make more specific par-
agraph 4 was sustained and appellant declined to
plead further, and the fourth paragraph was stricken
from his answer. The net result of these steps was
to eliminate all defensive matter, save the traverse
of the petition and the counterclaim and set-off of
the premiums paid. By agreement the case was then
transferred to the equity docket, and an agreed state
of facts was filed. From the agreed state of facts
we gather the following undisputed points: (a) "On
the 24th day of April, 1893, Morris Griffin made a
written application for a policy of insurance to be
issued upon the life of said Morris Griffin, for the
sum of $9,500, payable to Howe & Johnson." Then
the aplication is inserted in full. (b) In answer to

question 1 on page 2 of the application, as to the relationship of the beneficiaries, Howe & Johnson, to Griffin, the latter's answer is "Creditors." (c) Then the following question: "Has the person in whose favor the assurance is to be effected an interest in the life of the assured equivalent to the amount of the assurance applied for?" Griffin's answer is "Yes." (d) A policy of insurance for $9,500, upon the life of Griffin was issued by the Equitable, and made payable to Howe & Johnson. This policy is set forth in the agreed facts. (e) The amount of premiums paid by Howe & Johnson and the dates when the payments were made are fixed. (f) The proceeds of the policy amounting to $8,728.22 were paid to Howe and Johnson (Griffin having died) on August 15, 1900. (g) Neither Howe nor Johnson was a creditor of Griffin, and neither had any insurable interest in his life. From the above it will be seen that Griffin made a written application for the insurance; that he represented Howe & Johnson, not only as creditors, but creditors to the full amount of the insurance applied for. Griffin's consent was necessary in order to obtain the insurance. When he signed the application and stated that Howe & Johnson were creditors to the full amount of the policy, when they were in fact not creditors at all, he knew as well as they that it was a lie and a fraud upon the Equitable Assurance Society. These facts taken alone are sufficient to show the fraudulent character of the scheme which they had devised for the purpose of cheating the insurance company. With this view of the record, it will not be necessary to discuss the propriety of the trial court's action in sustaining the demurrer to the sixth paragraph of appellant's answer, but the rights of the parties to this action

may be determined by the agreed facts which appear in the record, for this court has, in the case of Bromley's Administrator v. Washington Life Insurance Company, 122 Ky. 402, 28 Ky. Law Rep. 1300, 92 S. W. 17, 5 L. R. A. (N. S.) 747, laid down, the doctrine that, "if a contract is against public policy, the court will not lend its aid to its enforcement. The defense need not be pleaded. If at any time it appears in the progress of the action that the contract sued upon is one which the law forbids, the court will refuse relief." The only question, therefore, to be determined, is whether or not the admitted facts show a contract that is against public policy.

Prior to the institution of this action appellee instituted suit in the Lawrence circuit court against the Equitable Life Assurance Society for the purpose of recovering upon the same policy upon which suit was brought in this action. That case was before this court and is reported in Griffin's Adm'r v. Equitable Life Assur. Society, 119 Ky. 856, 84 S. W. 1164, 27 Ky. Law Rep. 313. It was decided in that case that the Equitable Life Assurance Society was not liable to Griffin's administrator on two grounds: First. That the Equitable Life Assurance Society, in ignorance of its rights and by mistake, had paid the proceeds of the policy to Johnson & Howe, without any knowledge of the fact that they were not creditors. Second. That the transaction was clearly a speculation upon the hazard of human life, and consequently a gambling scheme, pure and simple, which rendered the policy void, because against public policy. This court has determined, therefore, that the policy sued upon in this action is void as against public policy; and, if Griffin's administrator could not recover on that policy, it neces-

sarily follows then that, if the Equitable Life
Assurance Society had not paid the proceeds of the
policy to Johnson & Howe, neither of them could
have recovered upon it. That being the case, we are
unable to see upon what principle of law a right of
action arises in favor of Griffin's administrator
against Howe's executor to recover money to which
neither is entitled. In the case of Smead v. William-
son, 16 B. Mon. (Ky.) 492, wherein one of the parties
transferred his property to another to avoid the pay-
ment of his debts, this court said: "It is a contract
in violation of good morals, inconsistent with honest
purposes, and therefore against public policy, and not
countenanced by the law nor by the tribunals which
administer the law. To such a transaction the maxim
applies, 'Ex turpi causa non oritur actio.' From
such a foundation no cause of action can arise; and
this is true, not only as to any action for the enforce-
ment or for a breach of the vicious contract itself,
but also as to any action by which either party may
attempt to regain from the other what, by reason of
the invalidity of the transaction as to third persons,
he may have lost for the benefit of the other party,
and he could not sustain an action either on the con-
tract or for its breach, or on any implied liability to
refund what he had paid on it. The law regarding
both parties as equally implicated in the illegal
transaction will not interpose in behalf of one of
them, either to enforce the illegal contract or to
relieve him from the consequence of either a partial
or a full performance of it." In the case of Chap-
man v. Haley, 117 Ky. 1004, 25 Ky. Law Rep. 2182,
80 S. W. 190, wherein the plaintiff sought to recover
$300 from one who had induced him to pay it in
purchase for counterfeit money, which was never

delivered, this court said: "It is unnecessary to say that this conspiracy between these two men to purchase counterfeit money constituted an illegal transaction and was void. (The facts of the High-wayman Case are then set forth.) Taken as a whole, we do not believe that the books disclose a parallel in audacity to the case at bar, saving always the history of the dark-lantern firm of Hounslow Heath, detailed above; that a like judgment did not overtake the parties litigant here, as dissolved the ancient partnership, marks the lapse of our modern procedure from the vigorous integrity with which the ancient judges administered the common law in its primitive virtue." Additional authorities might be cited, but these are sufficient to show the principle of law applicable to this case.

Counsel for the appellee, however, insist that the contract of insurance in this case should not be held to be void as against public policy, claiming that it would better comport with sound public policy to require the executor of Howe's estate to pay over the money to the widow and children of Morris Griffin. We are unable, however, to take this view of public policy. We think, if two parties enter into a fraudulent conspiracy to cheat a life insurance company, it should be held, first, that neither one of them can recover of the insurance company, and, second, that, if either one of them should obtain the proceeds of the policy, the other can, under no circumstances, recover of him. Thus the chances of either obtaining the proceeds will be rendered as remote as possible by making each guilty participant understand that at no stage of the proceeding can he invoke the aid of the law.

Counsel for appellee further contend that Howe

being a participant in the fraud, and the Equitable Life Assurance Society having paid the money to Howe & Johnson without knowledge of the fraud, and without availing itself of the plea it could have made, Howe's administrator has no right now to set up such a defense. If this be true, then Griffin's administrator would be without a cause of action, for it would be impossible for him to recover without proving that Howe & Johnson were not creditors, when the application, which he signed, alleged that they were. We do not accede to this doctrine, however, for, as has well been said in the case of Hall v. Coppell, 7 Wall. (U. S.) 558, 19 L. Ed. 244, and cited with approval by this court: "The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, 'Ex dolo malo non oritur actio,' is limited by no such qualification. Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. Wherever the contamination reaches it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation." Counsel for the appellee further invokes the doctrine laid down in the case of Anderson's Administrator v. Merideth, 82 Ky. 564, 6 Ky. Law Rep. 622, wherein this court said: "Where there is imposition, duress, oppression, threats, undue influence, taking advantage of necessity, or weakness, the party thus placed at disadvantage, although participating in the fraud, may be relieved in a court of equity as against his co-wrongdoer." For the purpose of applying this rule to this case, counsel for appellee call at-

tention to the fact that Morris Griffin could not write, but signed his name to the application by making his mark. Aside from this one thing, there is nothing else in the record to show that Griffin was a mere creature of Howe & Johnson, or that he was subject to their control and dominion. The petition does not allege, nor is it shown in the agreed facts, that Griffin was mentally weak, or that he was imposed upon by either Johnson or Howe, or that any fraud was practiced upon him. This court will not conclude from the mere fact that he was unable to write his name that he was deceived or imposed upon. Many of our worst criminals have been men who could neither read nor write. In the absence of anything to the contrary in the record, we must assume that Griffin, Johnson, and Howe were all equally guilty. That being the case, there is certainly nothing upon which may be based the doctrine invoked by counsel for appellee.

Counsel for appellee cite a number of authorities to the effect that the designation of a beneficiary outside the prescribed class does not render the policy void, but merely renders that designation invalid, but, as was said by this court in the case of Griffin's Adm'r v. Equitable Life Assurance Society, supra: ''It will be found, however, that these were all cases of benevolent aid societies, the charters of which provide that only members of the family of the insured could be the beneficiaries of the insurance. Therefore the opinions hold that, where one was named as the beneficiary in a certificate or policy issued on the life of a member of the society to whom it would be ultra vires for the society to pay the insurance because not a member of the class authorized by the charter to be beneficiaries, the

insurance should nevertheless be paid to the persons authorized by the charter.'' In other words, with very few exceptions, the doctrine goes to this extent: That where the insurance company pays the money to the beneficiary, who has no insurable interest in the life of the assured, he simply holds the proceeds as trustee for the party who is entitled to the proceeds. In the case under consideration, however, neither the beneficiary nor the insured is entitled to the proceeds. The money paid to Howe & Johnson is in good morals the money of the Equitable Life Assurance Society. How, then, can a right of action arise in favor of Griffin's administrator as against Howe's executor to recover money which rightfully belongs to some one else?

Holding that the contract of insurance is void as against public policy, and that the parties who obtained it participated equally in the fraud by which it was obtained, and that appellee, therefore, has no cause of action against appellant, judgment herein is reversed, and cause remanded, with directions to the trial court to dismiss the petition.

O'REAR, C. J., not sitting.

Petition for rehearing by appellee overruled.