# Shaw et al. v. M. Livingston & Co. et al.

March 12, 1943.

576

W. J. Webb and E. J. Stahr for appellants.

Boyd & Boyd and Wheeler & Shelbourne for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellants, Edna Carpenter Shaw and Bonnie Carpenter, are the beneficiaries of six insurance policies issued by the appellee Prudential Insurance Company on the life of their father, Val Carpenter, deceased; the appellee M. Livingston & Company is the assignee of the policies, and this appeal is from a decree of the Chancellor awarding to the assignee the proceeds paid into court by the Insurance Company. The case was tried on the pleadings and a stipulation of facts, from which it appears that Val Carpenter, the insured, was indebted to the Hickman Bank & Trust Company in the sum of $26,000, evidenced by notes, to secure the payment of which, the insurance policies referred to were formally assigned to that bank by the insured and the beneficiaries. The bank became insolvent and its liquidator, pursuant to a judgment in an ex parte proceeding instituted by him in the Fulton Circuit Court, sold and transferred approximately $13,000 of the Carpenter notes, together with the assigned insurance policies, to M. Livingston & Company. The transfer was approved by the insured and the beneficiaries, who, in addition to executing assignments on forms supplied by the Insurance Company, executed the following contract:

"This agreement, transfer and assignment of policies of insurance, by and between Val Carpenter, the insured, and Edna Shaw and Bonnie Carpenter, and the firm of Carpenter and Shaw, and M. Livingston & Company, Incorporated.

"Witnesseth; That Whereas there has been issued by the Prudential Insurance Company of America, six certain policies of Life Insurance on the life of Val Carpenter, as follows, to wit:—

| Policy Number | Date | Annual Premium | Amt. of Pol. |
|---|---|---|---|
| 4676529 | 4-17-1924 | $213.50 | $2500.00 |
| 4676530 | '' | 213.50 | 2500.00 |
| 4712298 | 5-20-1924 | 225.83 | 2500.00 |
| 4712297 | '' | 225.83 | 2500.00 |
| 5192134 | 9-26-1925 | 191.22 | 2000.00 |
| 5192125 | '' | 96.61 | 1000.00 |

"And Whereas the said Edna Shaw and Bonnie Carpenter and the firm of Carpenter and Shaw are the beneficiaries named in each and all of the above mentioned six policies, and

"Whereas the said Val Carpenter is indebted to the Hickman Bank & Trust Company in various sums, and the Receiver of said Bank, in liquidating its affairs, desires to transfer the notes of the said Val Carpenter to M. Livingston & Company to the sum and amount of $13,000.00, and

"Whereas the said notes, to the sum and amount of $13,000.00, are secured by an assignment of the above six policies of insurance,

"Now Therefore, for and in consideration of the sum of $1.00 cash in hand paid, the receipt of which is hereby acknowledged, and in order to duly allow the said Val Carpenter to liquidate his indebtedness to said Bank, we, Val Carpenter, Edna Shaw, Bonnie Carpenter, and the firm of Carpenter and Shaw composed of Edna Shaw and Bonnie Carpenter, hereby assign and transfer to M. Livingston & Company the above six policies of insurance; and hereby ratify, consent, and agree that the said Hickman Bank & Trust Company may transfer the notes of the said Val Carpenter to the said M. Livingston & Company, together with all of its rights, title and interest in and to the above mentioned six policies of insurance, and by the execution of this instrument, we transfer and assign said policies, as well as ratify each and every act of said Receiver of the Hickman Bank & Trust Company in endorsing, transferring, and assigning said notes of the said Val Carpenter to the amount and extent of $13,-000.00, to M. Livingston & Company which is a transfer and assignment of all their rights, title and interest in and to the above mentioned six policies of insurance.

"In Testimony Whereof we have hereunto set our hands this —— day of August, 1932."

The contract between the liquidator and M. Livingston & Company was reduced to writing as follows:

"This agreement, made and entered into this 10th day of August, 1932, by and between John Pyle, Special Deputy Banking Commissioner of the Commonwealth of Kentucky, in charge of the liquidation of the Hickman Bank & Trust Company, party of the first part, and M. Livingston & Company Incorporated, of Paducah, McCracken County, Ky., party of the second part.

"Witnesseth: That whereas, the second party had deposited, at the time the Hickman Bank & Trust Company was placed in the hands of the Banking Commissioner of the State of Kentucky, and still has on deposit in the Hickman Bank & Trust Company, the sum of $6100.00, and

"Whereas Val Carpenter was indebted to the Hickman Bank & Trust Company at the time it placed its affairs in the hands of the Banking Commissioner of the Commonwealth of Kentucky, and is still indebted to the first party as Special Deputy Banking Commissioner in charge of the liquidation of said Bank, in the sum of about $26,000.00, and to secure said indebtedness the said Val Carpenter has heretofore executed assignments of various policies of insurance which were issued on the life of the said Val Carpenter by the Aetna Life Insurance Co., the Prudential Insurance Company of America, and the New York Life Insurance Company, and

"Whereas the party of the first part and the party of the second part have agreed between themselves, they do by this writing set forth their agreement, which is as follows, to wit:—

"That the party of the second part has this day paid to the party of the first part the sum of $1899.72, the receipt of which is hereby acknowledged, and does, by this writing cancel and acknowledge receipt of payment and settlement by the party of the first part of $3000.00 of the deposit of the party of the second part in the Hickman Bank & Trust Company, and for and in consideration of said cash payment and said settlement of deposit, the

party of the first part hereby transfers and assigns, without recourse on the party of the first part, to the party of the second part, $13,000.00 of the indebtedness of Val Carpenter to the Hickman Bank & Trust Company, and further transfers and assigns to the party of the second part all of the right and title of the Hickman Bank & Trust Company under the assignment above referred to made by Val Carpenter to the Hickman Bank & Trust Company in policies issued on the life of the said Val Carpenter by the Prudential Insurance Company of America, as follows: (Policies here enumerated).

"Party of the first part further agrees to execute and sign any papers on his part that the party of the second part requires or finds to be necessary to properly assign and transfer the rights of the first party, as Special Deputy Banking Commissioner of the Commonwealth of Kentucky in charge of the liquidation of the Hickman Bank & Trust Company, to the party of the second part in each and all of the above mentioned policies of insurance, as it is the intention of the first party to assign $13,000.00 of the indebtedness of Val Carpenter to the second party, and to transfer all rights that the Hickman Bank & Trust Company has, under the assignment heretofore made to it by Val Carpenter, in said policies of Insurance, and to substitute the second party to its rights under said assignment.

"Witness Our Hands this the day and year first above written.

"Signed by  Jno. Pyle
"Special Deputy Banking Commissioner Commonwealth of Kentucky in charge of Liquidation of Hickman Bank & Trust Co.

"M. Livingston & Co., Incorporated,
"By, A. L. Livingston, President."

Two of the policies contained clauses waiving payment of premiums in the event the insured should become totally and permanently disabled; and on August

16, 1934, a suit was instituted by M. Livingston & Company, Val Carpenter, and the beneficiaries, against the Insurance Company, alleging that the insured, in March, 1932, had become totally and permanently disabled as a result of disease. As a consequence of this suit, which seems to have been asquiesced in by the Insurance Company, no further premiums were paid on the two policies mentioned, but during the period between the assignment to M. Livingston & Company and the death of Val Carpenter, that company paid on the remaining four policies premiums aggregating $5,301.80. The amount due on the policies at Carpenter's death and paid by the Insurance Company into court was less than the sum of the premiums with interest thereon, and the cash surrender value of the policies paid by M. Livingston & Company to the liquidator as part of the consideration for the assignment. Thus the correctness of the Chancellor's decree depends upon whether or not M. Livingston & Company was entitled to reimbursement for the amount so paid by it.

The claim of the beneficiaries that M. Livingston & Company had no insurable interest in the life of Val Carpenter, and that its transaction with the liquidator by which it acquired the notes and the insurance policies, was purely a gamble on the duration of Carpenter's life and hence, void, is effectually answered by the following considerations: While Carpenter's insolvency and the worthlessness of his notes may be inferred from the fact that he was heavily indebted and that the liquidator was willing to accept a comparatively small consideration for the notes' transfer, there is no proof as to the amount of his indebtedness or the extent of his resources; and, while it appears from the suit instituted by M. Livingston & Company, Carpenter, and the beneficiaries against the Insurance Company that Carpenter was totally and permanently disabled by disease in 1932, there is no proof that M. Livingston & Company regarded his notes as valueless. Assuming that they might have been so regarded, we are not prepared to say that the fact that they were secured by the assignment of the policies did not give them a value which justified their purchase without the imputation of bad faith being cast upon the purchaser. There is no denying the fact that a creditor has an insurable interest in the life of his debtor to the extent of the debt, and certainly M. Livingston & Company acquired the status of creditor when it receiv-

ed Carpenter's notes. Granting arguendo that the purchase of an insurance policy on the life of one in whom the purchaser has no insurable interest is void, and that where the insured knowingly participates in the transaction the insurance company cannot be required to pay, we are unwilling to say that where the purchaser acquired, not only the policy, but notes of the insured which were secured by the policy and the insurance company has paid the proceeds into court, the purchaser is not entitled to reimbursement to the extent of the premiums which he paid to keep the policy alive, plus the cash surrender value which he paid as a credit on the insured's indebtedness, as against beneficiaries of the policy who consented to and approved the purchase. Out of the confusion which has arisen over the disposition of the proceeds of insurance policies where the beneficiaries or assignees are without insurable interest in the life of the insured, the following principles may be said to have emerged in this State: Where the transaction is purely a wagering contract, the policy is void and the insurance company cannot be required to pay. If it does so voluntarily, the person to whom payment is made may retain it, subject, however, to the right of the person who paid the premiums, at least where they have been paid in good faith, to reimbursement. Griffin's Adm'r, v. Equitable Assurance Society et al., 119 Ky. 856, 84 S. W. 1164; Howe's Ex'r v. Griffin's Adm'r, 126 Ky. 373, 103 S. W. 714, 128 Am. St. Rep. 296; Newton v. Hicks' Adm'r, 282 Ky. 226, 138 S. W. (2d) 329. The good faith requirement, it seems, is satisfied where the insured and the person paying the premiums believed the insurable interest to exist. In the case at bar there is nothing to indicate that any of the parties concerned had any doubt on this subject.

It is further urged, however, on behalf of the appellants that the assignment of the policies to M. Livingston & Company was invalidated by the failure of the liquidator to transfer to that company the identical notes which Carpenter had executed to the Hickman Bank & Trust Company, to secure the payment of which, the policies had originally been assigned to that institution; and by the failure of M. Livingston & Company and the liquidator to relieve Carpenter and one or more of the beneficiaries who had signed his notes as sureties, of their liability on $13,000 worth of notes executed to the Hickman Bank & Trust Company. We find nothing in

the contracts between the parties heretofore set forth in full to indicate that any agreement was made or contemplated by which Carpenter or his sureties would be relieved of any portion of his indebtedness. Neither are we able to perceive how the fact that the liquidator transferred to M. Livingston & Company notes which Carpenter had executed to an insolvent bank whose assets had been acquired by the Hickman Bank & Trust Company instead of notes executed by Carpenter to the Hickman Bank & Trust Company affected or prejudiced Carpenter's or the beneficiaries' rights. The beneficiaries had no vested interest in the insurance policies, since the right to change the beneficiary was reserved by the insured; and in the absence of an agreement between the liquidator and M. Livingston & Company on the one hand and Carpenter and the beneficiaries on the other, that any portion of Carpenter's indebtedness was to be cancelled or remitted, it was wholly immaterial which of Carpenter's notes M. Livingston & Company acquired. The purpose of the assignment to M. Livingston & Company as recited in the contract between Carpenter, the beneficiaries of the policies, and M. Livingston & Company, was to allow Carpenter to liquidate his indebtedness to the Hickman Bank & Trust Company, and this was as effectually accomplished by transferring one set of notes at it would have been by transferring another, since the Hickman Bank & Trust Company had acquired title to the notes transferred. Moreover, it is not clear from the record which notes were actually transferred by the liquidator to M. Livingston & Company, other than, that they were notes to the Farmers & Merchants Bank. Neither does it appear with any degree of certainty which notes the original assignments of the policies to the Hickman Bank & Trust Company were intended to secure, or which notes the subsequent assignments of the policies were intended to secure. However, it was stipulated between the parties that "the policies described in the pleadings in this case were assigned to M. Livingston & Company to secure the notes so transferred to it, which notes are now held by the said M. Livingston & Company under said transfer and sale, and are filed in this proceeding."

Of like nebulous character is the claim of the appellee Elizabeth Carpenter, who intervened in the proceedings alleging that M. Livingston & Company had violated its agreement to pay $13,000 of Carpenter's indebted-

ness evidenced by his notes to the Hickman Bank & Trust Company, and that in consequence these notes had been sold at the liquidator's sale, together with other notes of Carpenter, to one B. M. Stewart from whom she purchased them, and thereby became entitled to the proceeds of the policies.

It may be true that Carpenter and the beneficiaries of the policies on his life thought that Carpenter would be relieved of $13,000 of his indebtedness to the Hickman Bank & Trust Company evidenced by notes which he had executed to that institution, but there is nothing in the record on which such a belief could have been logically predicated. It may be true that the Hickman Bank & Trust Company should have transferred to M. Livingston & Company notes of the face value of $13,000 executed directly to it by Carpenter rather than notes of Carpenter to other banks which the Hickman Bank & Trust Company had acquired in the process of their liquidation, but we are unable to perceive how the appellants were prejudiced by the substitution.

On the record as presented, the right of the assignee to reimbursement for the premiums expended in keeping the policies in force, plus interest, and the cash surrender value of the policies which it paid to the liquidator who otherwise would have surrendered them to the Insurance Company for their cash value, is clear; and since the total of these amounts exceeds the proceeds of the policies, the Chancellor did not err in awarding them to the assignee.

Judgment affirmed.