## Schum v. Lawrenceburg Nat. Bank et al.

December 15, 1950.

Lawrence F. Speckman, Judge.

M. Joseph Schmitt and Allen Schmitt for appellant.

James B. Young, Marvin Sternberg and James S. Shaw for appellees.

JUDGE REES—Reversing.

Michael A. Schum died intestate June 26, 1949, a resident of Jefferson County. He left a widow, Frances Schum, and a child by a former marriage, Joyce Ann Schum. He and Frances Schum were married in May, 1947, and had no children. In December, 1947, Michael A. Schum borrowed $13,500 from the Lawrenceburg National Bank, hereinafter referred to as the bank, and executed his promissory note for that amount which was secured by a chattel mortgage on several automobiles and trucks. He also assigned to the bank two policies of insurance on his life, one for $10,000 issued on March 21, 1947, and one for $2,000 issued on July 21, 1931. His father, Mike Schum, the designated beneficiary in each policy, joined in the assignments, but did not sign the notes or chattel mortgage. Each policy contained a provision that the insured could change the beneficiary. In July, 1948, Michael A. Schum borrowed an additional $6,000 from the bank and executed another note and another mortgage on additional motorized equipment. The mortgage recited that it was a second mortgage on the personal property described therein, and was to secure not only the note for $6,000 but to better secure the note for $13,500 theretofore executed to the bank. The note recited that it was also secured by the two life insurance policies theretofore assigned to the bank. Schum made one payment of $1,000 on the indebtedness, but failed to pay the first note when it became due on December 12, 1948. On March 24, 1949, Schum and the bank entered into an agreement which reads in part:

"Whereas both of said notes are now due and unpaid except a credit of One Thousand ($1,000.00) Dollars paid August 4, 1948 and it is now the desire of the party of the first part to make his assets go as far as they will in satisfying said indebtedness owed by him to the party of the second part on said notes;

"Now, therefore, for and in consideration of the premises and in order to avoid unnecessary litigation and expense the party of the first part does now hereby

assign, sell, transfer and relinquish to the party of the second part, its successors and assigns, all right, title, interest and equity which he has or owns in and to (describing the mortgaged personal property)."

The bank was to sell the property and apply the proceeds to the debt. If any excess remained Schum was to receive it, but if any deficiency existed he was to remain indebted to the bank in that amount. The bank sold some of the equipment prior to June 26, 1949, receiving $2,760. Michael A. Schum met his death by drowning on June 26, 1949, and subsequent to that date the bank sold other equipment for $323.70, and received $3,355.42 as proceeds from equipment sold by the holder of the first mortgage. The bank still has in its possession one piece of heavy equipment which it is endeavoring to sell for $3,000. The bank also received from the Insurance Company $24,416.03, the proceeds of the two assigned policies each of which provided for double indemnity in case of accidental death. It thus appears that the bank has in its hands far more property than is required to satisfy the indebtedness of the deceased. Mike Schum, the designated beneficiary in the two policies of insurance, made demand of the bank that it sell all the mortgaged equipment of Michael A. Schum, deceased, and pay itself first from the proceeds of the sale, and if there was any unpaid balance on the indebtedness, after having resorted to this method of payment, then and only then should it resort to the proceeds of the insurance policies. The bank was uncertain of its rights and duties declined to make payment in accordance with this demand, whereupon Mike Schum brought an action in the Jefferson Circuit Court seeking a declaration of rights. The Lawrenceburg National Bank, Frances Schum and Joyce Ann Schum were made defendants. Frances Schum, administratrix of the estate of Michael A. Schum, deceased, filed an intervening petition asking to be made a party to the action, and she was permitted to defend for and on behalf of the estate. The circuit court adjudged that the bank should pay to the administratrix of the estate of Michael A. Schum, deceased, the sum of $3,679.12, the amount received by it from the sale of the mortgaged property subsequent to the death of Michael A. Schum, and should transfer to her the unsold item of equipment held by it. It was also adjudged that the balance of Michael A. Schum's indebtedness

due at the time of his death be paid from the proceeds of the insurance policies, and that the remainder of such proceeds be paid to the beneficiary, Mike Schum.

On this appeal the beneficiary in the two policies of insurance insists that the bank must first exhaust the proceeds from the sale of the mortgaged chattels before resorting to the insurance money. It is argued that the bank extended credit on the basis of the mortgaged property and not the assigned insurance policies which had a cash surrender value of only $700 at that time. Appellant contends further that the action of the bank and the deceased in executing the agreement of March 24, 1949, and the action of the bank in proceeding under that agreement indicate the intention of the parties that the mortgaged property be used in payment of the debt.

A leading case on the subject is Barbin v. Moore, 85 N.H. 362, 159 A. 409, 83 A.L.R. 62, where one George Leclerc assigned two policies of insurance on his life and executed a mortgage on his real estate to a bank to secure a loan. After Leclerc's death the bank paid the indebtedness out of the proceeds from the insurance policies. Thereafter the administrator sold the real estate. It was held that the beneficiaries of the life insurance policies were subrogated to the right of the bank against the mortgage security, including the fund into which that security had been converted by the administrator. The question was before this court in the recent cases of Kash's Ex'r v. Kash, 260 Ky. 508, 86 S.W.2d 273; Berger v. Berger, 264 Ky. 225, 94 S.W.2d 618, and Froman v. Froman's Ex'r, 293 Ky. 1, 168 S.W.2d 361. In each of these cases it was held that the indebtedness should be paid from the proceeds of the assigned insurance policy rather than from the estate, since from the facts it appeared that such was the intent of the insured. In the Froman case the assignment provided that no person interested in the policy should, by reason of the application of the proceeds of the policy to the indebtedness secured by the assignment, have the right to contribution or reimbursement from any other party or be subrogated to the right of the assignee in any other collateral. No such provision is found in the assignment here involved. In the Kash and Berger cases the mortgage contained a clause providing "if

said policy of insurance be still in force, the indebtedness secured hereby shall become immediately due and payable upon the death of the insured, and the party of the second part shall apply toward the payment thereof the amount due from it under the terms of said policy and pay over the balance, if any, to such person or persons as may be legally entitled thereto.'' [264 Ky. 225, 94 S.W.2d 619.] In each of these cases the court said that the language of the mortgage was broad enough to convey the intention of the insured and to establish his and the creditor's agreement that in the event of his death the creditor was to utilize the proceeds of the policy for the payment of decedent's debt before resorting to the enforcement of the mortgage. Neither of the mortgages here involved contains any mention of the insurance policies. All of the above cases cite the case of Barbin v. Moore, 85 N.H. 362, 159 A. 409, 414, 83 A.L.R. 62, as setting forth the rule that the intent of the insured decedent governs, but each case was distinguished from the Barbin case on the facts. In Barbin v. Moore it was said that the failure of the insured to make his estate or the creditor the beneficiary of the policies when they were assigned, or to direct that the debt due the bank be paid from the proceeds of the policies, indicated his intent that the insurance money should be resorted to only after the other security had been applied on the indebtedness. In the course of the opinion it was said:

''The appointment of designated beneficiaries under the policies gave them certain rights. In order to defeat them it must be made to appear that the execution of the power in derogation of those rights was broad enough to accomplish that end. Mellows v. Mellows, 61 N. H. 137. It is not to be extended upon any theory that in some fashion or other the estate or its general creditors have an equitable claim upon the insurance fund. One of the prime ideas in life insurance is the creation of a fund free from such liabilities.''

And speaking further of the insured's intent, the court said:

''The policies provided a plain way to make it effective. As before stated, the choice of another method of giving the bank the added security is significant of the purpose in mind. Not only could the insured have

provided that the insurance should be used to pay the debt existing at his decease by making the bank the designated beneficiary to the extent of its claim against the estate, but a mere direction in the pledge to resort to the insurance first would have answered the purpose of expressing the alleged design. But one searches in vain for any word or act indicating such purpose.''

So, in the present case there was nothing in the mortgages or assignments indicating an intent that the proceeds of the policies should first be resorted to for payment of the debt. On the contrary, the insured by the agreement of March 24, 1949, divested himself of all title to the mortgaged property, and directed the bank to sell it and apply the proceeds in payment of the debt. The test to be applied in a situation such as is presented here was set out in Kash's Ex'r v. Kash, supra [260 Ky. 508, 86 S.W.2d 275], where it was said:

"* * * the appointment of a certain beneficiary under a policy gives him or her certain rights. And, unless the beneficiary is changed, his rights continue, notwithstanding the insured's assignment of the policy, and, upon the death of the insured, becomes absolute as against his creditors and his estate subject to the right of the creditors to whom it was assigned. To effectuate the defeat of the right of the beneficiary, it must appear that the insured, by the wording of the assignment of the policy or the instrument evidencing the pledging it, is broad enough in its terms to accomplish the derogation of the right of the beneficiary. This result may be obtained by the insured designating the pledgee as the beneficiary for the sum of his debt, or by directing the pledgee first to resort to the proceeds of the policy for the payment of the debt which it is pledged to secure, in the event of the death of the insured, while the debt is still in existence, before resorting to the enforcement of the mortgage, where it is also secured by a mortgage on real estate. In either case, the insurance as against the designated beneficiary is thus made a part of the estate of the insured.''

The chancellor distinguished the present case from the case of Barbin v. Moore, supra, on the ground that a creditor does not have an insurable interest in the life of his debtor in this state, and on the further ground

that the decision in Barbin v. Moore was controlled by a statute of New Hampshire which read:

"When a policy of insurance is effected by a person on his own life or the life of another, expressed to be for the benefit of a third person or his representatives, the party for whose benefit such policy is so expressed to be made shall be entitled to the sum so insured, against the claims of the creditors or representatives of the party effecting the same." Pub. Laws 1926, c. 277, sec. 2.

It has been held by this court that a creditor has an insurable interest in the life of his debtor to the extent of the debt. DeLong's Adm'r v. Arnold, 306 Ky. 290, 206 S. W. 2d 928; Shaw v. M. Livingston & Co., 293 Ky. 575, 169 S. W. 2d 612; Metropolitan Life Insurance Co. v. Nelson, 170 Ky. 674, 186 S. W. 520; L. R. A. 1916F, 457; Ann. Cas. 1918B, 1182. The New Hampshire statute referred to in Barbin v. Moore is substantially the same as our statute on the subject, KRS 297.150(1). The majority rule seems to be that, in a situation such as confronts us, the intention of the insured is the controlling factor in determining the rights of the parties. Annotation in 160 A. L. R. 1389, to Smith v. Coleman, 184 Va. 259, 35 S. E. 2d 107, 160 A. L. R. 1376. In order to ascertain that intention, the particular facts and circumstances of the case must be examined. When the rule is applied in the light of the facts and circumstances of the present case, the appellant must prevail though sympathy, if permitted to intervene, would lead to a different result.

The judgment is reversed with directions to declare the rights of the parties as herein indicated.